[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15127
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-21175-JLK

IVFMD FLORIDA, INC.,

Plaintiff-Appellant,

versus

ALLIED PROPERTY & CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 8, 2017)

Before TJOFLAT, MARCUS, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

IVFMD Florida, Inc. ("IVFMD Florida") appeals the district court's grant of

summary judgment in favor of Allied Property and Casualty Insurance Co.

("Allied") on IVFMD Florida's complaint claiming breach of contract for Allied's

failure to defend and indemnify IVFMD Florida in an underlying countersuit filed by a Texas corporation, IVFMD, P.A. ("IVFMD Texas"). IVFMD Florida argues that the district court misinterpreted its insurance policies with Allied and abused its discretion by denying a motion for reconsideration and to set aside the order of summary judgment. After careful review, we affirm.

I.

The basic facts are these. From September 2012 to September 2014, Allied issued general liability insurance policies to IVFMD Florida, then known as South Florida Institute for Reproductive Medicine, P.A. ("SFIRM"). Allied also issued umbrella policies during the relevant time. The general liability policies provided:

> We will pay those sums . . . that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

> HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

The policies did not apply to "personal and advertising injury" that involved knowing violations of another's rights or material that was published with knowledge of its falsity. The general liability policy for 2013-2014 also excluded injury that arose "out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." However, "other intellectual property

2

rights" did not include use of another's advertising idea in an advertisement. The policies defined "personal and advertising injury" as "injury . . . arising out of one or more of the following offenses," which included "[t]he use of another's advertising idea in your 'advertisement'" and "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" According to the policies, a "suit" was "a civil proceeding in which damages because of . . . 'personal and advertising injury' to which this insurance applies are alleged."

In 2013, IVFMD Florida sued IVFMD Texas in the Northern District of Texas, alleging that the abbreviation "IVFMD" was subject to a trademark that belonged to IVFMD Florida. The complaint as amended asserted trademark dilution, trademark infringement and related claims. In its initial answer to the complaint, IVFMD Texas asserted three counterclaims, seeking declaratory judgments of trademark invalidity, non-infringement, and an exceptional case under the Lanham Act. It also sought attorneys' fees under the Lanham Act.

IVFMD Texas alleged that IVFMD Florida's 2013 trademark application for the abbreviation "IVFMD" was rejected by the U.S. Patent & Trademark Office ("USPTO") because the abbreviation was not distinctive, and IVFMD Florida failed to provide evidence of acquired distinctiveness through a secondary meaning. It also claimed that IVFMD Florida used SFIRM, and not "IVFMD," as its source indicator. According to IVFMD Texas, the only thing the parties had in

common was that both provided in vitro fertilization services and "both employ[ed] the unprotectable 'IVFMD' abbreviation in connection with their businesses." The parties operated in distinct geographic markets, and no market overlap or likelihood of confusion existed. IVFMD Texas thus asserted that it had not infringed on a valid trademark, and that IVFMD Florida had brought a groundless and unreasonable trademark action in bad faith.

IVFMD Texas later amended its answer and counterclaims. The most recent answer raised the same counterclaims, but included new factual allegations that IVFMD Florida had increased its use of "IVFMD" in advertisements after the lawsuit was filed in order to "shore up its litigation position." It also acknowledged that IVFMD Florida's 2014 trademark application was published by the USPTO, but the opposition proceedings were suspended pending disposition of the Texas lawsuit. In May 2014, Allied rejected IVFMD Florida's request for defense and indemnification. And in November 2014, IVFMD Florida and IVFMD Texas reached a settlement and dismissed the case.

In December 2014, IVFMD Florida filed the instant complaint against Allied in state court. Allied removed the case to the United States District Court for the Southern District of Florida based on diversity of citizenship. Allied moved for summary judgment and submitted a statement of material facts and exhibits, which included IVFMD Texas's initial answer but did not include its most recent answer.

4

It argued that there was no coverage for the counterclaims because IVFMD Texas sought no damages, there was no claim for bodily injury or property damage, the claims did not qualify as "personal and advertising injury," the claims were not caused by an "occurrence," the claims were excluded from coverage under the general policies, and the umbrella policies did not provide coverage. Over one month after the deadline for responding to the motion had passed, the district court granted the unopposed motion. The court adopted Allied's legal arguments and found that the policies did not afford coverage for a countersuit for declaration of non-infringement of a trademark.

On the same day the district court granted Allied's motion for summary judgment, IVFMD Florida moved for an extension of time to respond because IVFMD Florida's counsel never received the motion. One week after judgment was entered in Allied's favor, IVFMD Florida moved for reconsideration and to set aside summary judgment, pursuant to Fed. R. Civ. P. 59(e) and 60(b), arguing that its pretrial counsel, who was not listed as IVFMD Florida's lead counsel, had not been served with the summary judgment motion due to an error in the electronic filing system. Before the district court ruled on the motion for reconsideration, IVFMD Florida filed its notice of appeal from the district court's order granting summary judgment. After the district court denied IVFMD Florida's motion for reconsideration, IVFMD Florida did not amend its notice of appeal.

5

II.

We review a district court's grant of summary judgment de novo, viewing all the evidence and drawing all reasonable factual inferences in favor of the nonmoving party.  Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The interpretation of a provision in an insurance contract is a question of law subject to de novo review.  Stephens, 749 F.3d at 1321.

Because federal jurisdiction over this matter is based on diversity, Florida law governs the determination of the issues on appeal. Davis v. Nat'l Med. Enters., Inc., 253 F.3d 1314, 1319 n.6 (11th Cir. 2001).  In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give each provision its "full meaning and operative effect."  Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1186 (11th Cir. 2002) (citing Dahl–Eimers v. Mutual of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir. 1993); Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla. 1979)).  Courts start with the plain language of the policy, and unambiguous language governs.  Id.; Auto–Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000).  If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered

6

"ambiguous," and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." Auto–Owners, 756 So. 2d at 34.

Under Florida law, an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses. Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc., 771 So.2d 579, 580 (4th Fla. Dist. Ct. App. 2000). If the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit. Id. Coverage is determined from examining the most recent amended pleading, not the original pleading. State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004) (applying Florida law in appeal concerning an insurer's duty to defend and indemnify).

Here, IVFMD Florida argues that the district court misinterpreted the policies because IVFMD Texas's counterclaim for a declaratory judgment of trademark invalidity was an attack on IVFMD Florida's trademark, which falls under the policies' definition of "advertising injury." It says that IVFMD Texas's attack on its trademark arose out of either the use of another's advertising idea in its advertisement or infringing on another's copyright, trade dress or slogan in its advertisement. We disagree.

7

In pertinent part, the policies define "personal and advertising injury" as an injury arising out of "the use of another's advertising idea" or "infringing upon another's copyright, trade dress or slogan" in an advertisement. The policies do not define "advertising idea," but, applying Florida law, we have construed the term to mean "any idea or concept related to the promotion of a product to the public." Hyman, 304 F.3d at 1188. The language is otherwise unambiguous. See Auto–Owners, 756 So.2d at 34. In its counterclaims, IVFMD Texas did not allege that the use of "IVFMD" was its idea or concept for promotion of in vitro fertilization services. Nor did it allege that it had a copyright, trade dress, or slogan related to the abbreviation. Rather, IVFMD Texas alleged that "IVFMD" was not distinctive, and, therefore, both parties could use the abbreviation in the promotion of their services. IVFMD Texas did not attack IVFMD Florida's use of the abbreviation, but sought to protect its own use of it. Thus, as the district court properly found, IVFMD's allegations did not bring its injury within the policies' coverage. Amerisure,771 So.2d at 580.

We are also unpersuaded by IVFMD Florida's argument that IVFMD Texas's request for a declaratory judgment of an exceptional case under the Lanham Act was an "advertising injury" within the meaning of the policies. It cites Hyman, 304 F.3d at 1193-94, to show that we've previously held that Lanham Act violations could give rise to advertising injury coverage, but Hyman is

8

inapposite.  In <u>Hyman</u>, the plaintiff was sued for trade dress infringement under the Lanham Act.  <u>Id.</u> at 1187.  The policy at issue stated that "advertising injury" included "misappropriation of advertising ideas or style of doing business."  <u>Id.</u> We determined that trade dress -- defined as "the total image of a product and may include features such as size, shape, color or color combinations, textures, graphics, or even particular sales techniques," <u>id</u>. at 1189 (quotation omitted) -- is an advertising idea, and trade dress infringement requires a showing of misappropriation of that idea.  <u>Id.</u>  But in this case, IVFMD Texas did not allege trade dress infringement.  Rather, it sought attorney's fees under the Lanham Act because IVFMD Florida's trademark infringement action was unfounded.

Finally, IVFMD Florida argues that the district court misinterpreted the policies and the corresponding duty to defend by examining IVFMD Texas's initial answer and counterclaims, rather than its most current pleading.  IVFMD Florida recognizes that it did not raise this issue below, but it asserts that the district court's failure to examine IVFMD Texas's most current pleading is plain error. We generally decline to consider an issue raised for the first time on appeal in civil cases.  <u>Access Now, Inc. v. Sw. Airlines Co.</u>, 385 F.3d 1324, 1331 (11th Cir. 2004).  However, even if we were to apply the plain-error standard in this case, which we have said "rarely applies in civil cases," <u>Ledford v. Peeples</u>, 657 F.3d 1222, 1258 (11th Cir. 2011), IVFMD Florida has not satisfied its burden.

Under the plain-error standard, the appellant has the burden to establish that: (1) an error occurred; (2) the error was plain; (3) the error affected its substantial rights; and (4) not correcting the error would seriously affect the fairness, integrity, or public reputation of the judicial proceeding. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999). Substantial rights are affected if there is a reasonable probability of a different result absent the error. United States v. Hesser, 800 F.3d 1310, 1325 (11th Cir. 2015). Although the district court failed to examine the proper pleading in its examination of Allied's summary judgment motion, State Farm, 393 F.3d at 1230, IVFMD Florida has failed to show that there is a reasonable probability that summary judgment would not have been granted absent the error. Hesser, 800 F.3d at 1325.

Like the counterclaims examined by the district court, IVFMD Texas's most recent pleading sought declaratory judgment for trademark invalidity, non-infringement, and an exceptional case warranting attorney's fees. IVFMD Florida says that the most recent pleading differed from the initial pleading because it included more information about the parties' use of "IVFMD" and incorporated advertisements into the pleading. However, these facts did not suggest the IVFMD Florida used IVFMD Texas's advertising idea in its advertisement or that it infringed on IVFMD Texas's intellectual property rights. Instead, IVFMD Texas alleged that IVFMD Florida's increased use of "IVFMD"

was a bad-faith attempt to bolster its unfounded claims of trademark infringement and dilution. Because the facts added to the most recent pleading did not bring IVFMD Texas's injury within the policies' coverage, examination of this pleading would not have altered the district court's ruling on the motion for summary judgment. Amerisure,771 So.2d at 580; Hesser, 800 F.3d at 1325.

In short, IVFMD Texas's pleading did not allege facts that constituted an "advertising injury" as defined in the policies. As a result, the district court correctly determined that Allied did not have a duty to defend IVFMD Florida in the countersuit. Amerisure, 771 So.2d at 580.[1]

### III.

Finally, we are compelled to conclude that we lack jurisdiction to review the denial of IVFMD Florida's motion for reconsideration. A Rule 59(e) motion is a tolling motion under Fed. R. App. P. 4(a)(4)(A). See Fed. R. App. 4(a)(4)(A)(iv). A party intending to challenge an order disposing of a timely Rule 4(a)(4)(A) motion must file a timely notice of appeal, or amended notice of appeal, from the

---

[1] Allied also argued before the district court, and the district court found by adopting the argument, that the counterclaims were outside the scope of the policies because: (1) IVFMD Texas did not seek damages; (2) there was no claim for additional types of injury covered by the policies; (3) the counterclaims were not caused by an "occurrence"; (4) the policy otherwise excluded the claims; and (5) the umbrella policies did not provide coverage. However, IVFMD Florida does not argue that the counterclaims alleged injury other than "advertising injury," which is the only relevant basis for coverage under the policies here. It also does not argue that the umbrella policies, which did not expand the definition of "advertising injury" in any way relevant to the instant case, provided coverage. Moreover, because we agree that the counterclaims alleged injury outside the scope of the policies, we need not decide whether the relief sought for the injury was outside the scope of the policies, whether the injury was caused by an "occurrence," or whether the policies otherwise excluded the injury.

entry of the order disposing of the last Rule 4(a)(4)(A) motion.  Fed. R. App. P. 4(a)(4)(B)(ii); <u>Weatherly v. Ala. State Univ.</u>, 728 F.3d 1263, 1271 (11th Cir. 2013) (noting that to seek appellate review of a timely post-trial motion for relief under Fed. R. Civ. P. 50(b) or 59(b) a party must file a separate notice of appeal or amended notice of appeal to designate the motion as subject to appeal).  IVFMD Florida timely filed its motion for reconsideration, under Rule 59(e), within 28 days of the entry of the judgment,  Fed. R. Civ. P. 59(e), but it failed to amend its notice of appeal as required.  Therefore, we lack jurisdiction to decide this issue.

**AFFIRMED.**